644 P.2d 515

The CEBOLLETA LAND GRANT, ex rel. BOARD OF TRUSTEES OF the CEBOLLETA LAND GRANT, Plaintiff-Appellee,

v.

Florencio A. ROMERO and Paula P. Romero, Defendants-Appellants.

No. 13280.

Supreme Court of New Mexico.

March 26, 1982.

Rehearing Denied April 29, 1982.

Apodaca & Pope, John W. Pope, Anthony R. Apodaca, Belen, for defendants-appellants.

Simms & Garcia, Reginald J. Garcia, Albuquerque, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Appellee, Cebolleta Land Grant (Land Grant), filed suit in district court for the ejectment of appellants, Florencio and Paula Romero (the Romeros), from certain alleged common lands of the Land Grant located in Valencia County, New Mexico.

The Romeros answered, denying that the lands they occupied were common lands of the Land Grant, and counterclaimed for quiet title, alleging that they owned the property in fee simple absolute and had paid taxes on it for a period in excess of ten years. The Romeros asked that the title to the property be quieted in their favor and against the Land Grant.

The district court, upon motion by the Land Grant, granted a summary judgment ordering the Romeros to return possession of the tract to the Land Grant and confirmed possession of the tract in the Land Grant. Six months later, the Land Grant moved for a summary judgment on the Romeros quiet title counterclaim. Upon reviewing affidavits, a deposition, and hearing argument of counsel, the district court granted summary judgment against the Romeros' quiet title counterclaim. From this summary judgment, the Romeros appeal. We reverse the trial court.

Summary judgment is a drastic remedy which should be used with extreme caution. *Thompson v. Fahey*, 94 N.M. 35, 607 P.2d 122 (1980). The sole purpose of a summary judgment proceeding is to determine whether a genuine issue of material fact exists, *see* N.M.R.Civ.P. 56(c), N.M.S.A. 1978 (Repl.Pamp.1980); it is not to be used to decide an issue of fact, *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977).

A review of the record reveals that there are a minimum of three issues of material fact in dispute: (1) whether the property description is Tract 7–A of the Cebolleta Land Grant or Tract 96, Map R–972; (2) whether the land in question is common land of the Land Grant or privately-owned property of the Romeros; and, (3) whether the Land Grant has paid taxes on the property in question.

In this case, the Romeros claim title paramount to that of the Land Grant on the basis of four deeds conveying the land to Florencio. One deed is a warranty deed from Florencio Romero's mother; another is from Florencio's brothers; and the other two deeds are tax deeds from the State of New Mexico for payment of delinquent taxes on the property.

The Land Grant alleges that the property is common land and that the Board of Trustees of the Grant have continually paid taxes on this particular parcel of land. In support of these contentions, the Land Grant submitted affidavits from the officers of the Board of Trustees. The affidavit of the Secretary of the Board also states that a search of the minutes and resolutions of the Board's meetings did not reveal a conveyance of Tract 7–A to any person as is required by Section 49–1–11, N.M.S.A.1978. This section requires that an alienation of common lands in a grant be adopted in the resolutions of the board of trustees for the grant and that the resolution be approved by the district judge of the district where the grant, or portion thereof, is situated. *Id.*

In response to these affidavits, the Romeros filed their own affidavits to show that the property in question was privately owned by Antonio Romero, grandfather to Florencio Romero, and that the Board of Trustees of the Grant have never paid taxes on Tract 96, Map R–972. In particular, the affidavit of Anastacio Marquez reveals that independent surveys conducted by him as Water Commissioner and by the Board of Trustees of the Land Grant, while he was Chairman, classified the property in question as privately owned by Antonio Romero.

The deposition of Florencio Romero in summary reveals that his parents and he are heirs of the Land Grant; that the property in question was once common land, but that his grandfather purchased the property from the Land Grant Board; that his mother was the owner of the property while he was in the armed forces. When he returned from military service, he learned that his mother had not been paying the taxes on the property, and he subsequently paid all the taxes which were past due, and thus was given a tax deed. The warranty and quitclaim deeds had been given to him so that there would be no dispute within the family as to his ownership of the property.

A review of the above-attested-to facts convinces us that there is a genuine issue as to whether the property in question is common land of the Land Grant or privately-owned property of the Romeros. Determination of this fact is essential to the legal outcome of this case.

 If the property is common land of the Land Grant, then the Romeros, if valid heirs of the Land Grant, may hold the property as tenants in common with the Board of Trustees. *Cf. Apodaca v. Tome Land & Imp. Co. (NSL)*, 91 N.M. 591, 577 P.2d 1237 (1978) (heirs of an incorporated land grant hold title as tenants in common).[1] Thus, even assuming that the Land Grant had not paid taxes on this parcel of property, a fact which is also in dispute, the tax deed issued to the Romeros for payment of back taxes would inure to the benefit of the tenancy. *See Reed v. Nevins*, 77 N.M. 587, 425 P.2d 813 (1967). This is true, since it is the duty of all cotenants who have an interest in the property to pay the entire tax due, subject to a right of reimbursement from the other cotenants. *Haden v. Eaves*, 55 N.M. 40, 226 P.2d 457 (1950).

In addition, if the property is common land and the Romeros paid delinquent taxes on it, the tax deed would constitute, at a minimum, color of title for purposes of adverse possession. *See Reed v. Nevins, supra*. Grant lands which are subject to taxation cannot be sold without the approval of the Board except in proceedings to enforce the payment of taxes. *See Merrifield v. Buckner*, 41 N.M. 442, 70 P.2d 896 (1937).

However, if the property is not common land of the Land Grant, then the Romeros, by virtue of their tax deed, would have paramount title to that of the Land Grant. *See State v. Garcia*, 77 N.M. 703, 427 P.2d 230 (1967); *Alamogordo Improve-ment Co. v. Hennessee*, 40 N.M. 162, 56 P.2d 1127 (1936). To prove that the property in question is privately owned, the Romeros will be required to establish compliance with Section 49-1-11.

It is conceivable, based upon the affidavits and deposition in the record, that the property is common land of the Land Grant. However, a court is not to weigh the evidence at a summary judgment proceeding and decide an issue of fact; the court must decide only whether a material issue of fact exists. If one does exist, then the cause must proceed to a trial on the merits.

We hold that there are several genuine issues of material fact and that summary judgment was inappropriate. The trial court is reversed, and this cause is remanded for a trial on the merits.

IT IS SO ORDERED.

PAYNE, FEDERICI and RIORDAN, JJ., concur.

EASLEY, C. J., respectfully dissenting.

---

1. *Apodaca* involved construction of § 8–2–2, N.M.S.A.1953 [now § 49–2–2(B), N.M.S.A. 1978] as it applies to incorporated land grants. We do not know if the Cebolleta Land Grant is incorporated. If it is, *Apodaca* and §§ 49–2–1 through 49–2–18 are controlling; if it is not, then the general provisions of §§ 49–1–1 through 49–1–21, N.M.S.A.1978 (Orig.Pamp. and Supp.1979), would apply. In particular, § 49–1–3(C), N.M.S.A.1978 (Supp.1979), may be analogous to § 49–2–2(B). While this issue is not before us, we raise it merely in the context of our discussion of the text accompanying this footnote.