750 P.2d 118 (1988)
106 N.M. 757
J. Placido GARCIA, Charles S. Solomon, Ronald J. Van Amberg, and Roth, Van Amberg, Gross, Amarant and Rogers, a New Mexico Partnership, Plaintiffs-Appellants,
v.
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A., a New Mexico Professional Association, Kenneth J. Ferguson and Jo Saxton Brayer, Defendants-Appellees.
No. 16667.
Supreme Court of New Mexico.
February 9, 1988.
*119 Michael Schwarz, Santa Fe, for plaintiffs-appellants.
Modrall, Sperling, Roehl, Harris & Sisk, Kenneth L. Harrigan, Patrick J. Rogers, Albuquerque, for defendants-appellees.

*120 ON MOTION FOR REHEARING
Appellants' motion for rehearing is granted. The Opinion filed November 23, 1987 is withdrawn and the following Opinion is substituted in lieu thereof:

OPINION
STOWERS, Justice.
Plaintiffs brought this action against defendant attorneys and their law firm which had successfully opposed plaintiff Garcia in a previous federal civil rights lawsuit. In the prior action Garcia sued the members of the Board of Education of the Socorro Consolidated School District under 42 U.S.C. Section 1983 (1982) alleging that the board had violated his civil rights by failing to renew his contract of employment. The school board members were represented by defendants.
Garcia in that case sued the school board members in both their individual and official capacities. Eleventh amendment immunity was raised as a defense to the official capacity claims in the board's Answer, First and Second Amended Answer and Pretrial Order, but apparently was not pursued or ruled on by the court.
On the second day of trial the court addressed Garcia's attorney and asked him whether he wanted a jury instruction for punitive damages. The judge suggested that explaining and distinguishing the claims against the board members in their individual and official capacities would confuse the jury. In essence the court recommended that Garcia drop one of the claims, preferably the claim against the board in its individual capacity. The court also pointed out that although this would result in the elimination of plaintiff's claim for punitive damages, it would also bar the board members' good faith immunity defense. The board's attorneys did not participate in this exchange. On the next day of trial the court again addressed plaintiff's attorney inquiring whether any decision had been made about dropping one of the claims. Garcia's attorney, noting that he had conferred with his client and with co-counsel, informed the court that plaintiff wanted to drop the claim against the board members in their individual capacities. Defendants stated that there was no problem with this decision. Then, in chambers when the trial judge and attorneys for both plaintiff and defendants discussed the final version of the jury instructions, the following conversation took place:
THE COURT: [T]he instructions are drafted as against the defendants strictly in their official capacities. I understood that's the way the plaintiff wanted it. Therefore, that takes out any issue of punitive damages and also any issue of good faith. So if there's no hooker  There's no problem; if the plaintiff is entitled to a verdict, it's recoverable. I assume that's true.
[Defense Counsel]: That's true, Your Honor.
[THE COURT]: I mean if the plaintiff were recovering, then all at once the school district will not respond or claim some kind of immunity or something.
[Defense Counsel]: No. They probably would not have the money, but there's no problem with that.
[Plaintiff's Counsel]: Of course, if there's nothing with the County, the Constitution provides for that.
Garcia v. Board of Educ. of Socorro Consol. School Dist., 777 F.2d 1403, 1406 (10th Cir.1985), cert. denied, 479 U.S. ___, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986). This was the substance of the court's inquiry. It is unclear what the court meant by the statement, "the school board will not respond or claim some kind of immunity or something." Defense counsel's responses during this colloquy are at issue in the present lawsuit.
The federal trial judge then submitted to the jury the question of whether the board, acting in its official capacity, had deprived plaintiff of a constitutionally protected liberty interest without due process. The jury awarded plaintiff $180,000 and the board appealed the judgment.
On appeal to the United States Court of Appeals for the Tenth Circuit, the school board raised for the first time, since the inception of the trial, the issue of immunity *121 from suit under the eleventh amendment. The opinion by the Tenth Circuit held that the eleventh amendment immunity is jurisdictional and, therefore, could have been raised at any time. In New Mexico sovereign immunity is limited to and governed by statute; thus, a school board's attorney does not have the authority to waive this immunity. NMSA 1978, §§ 41-4-13 to -25 (Repl.Pamp. 1986); Garcia, 777 F.2d at 1407. The court then concluded that since local school boards in New Mexico were "arms of the state," see Maestas v. Board of Educ. of the Mora Indep. School Dist., 749 F.2d 591 (10th Cir.1984); Martinez v. Board of Educ. of the Taos Mun. School Dist., 748 F.2d 1393 (10th Cir.1984), this suit was barred against the school board and its members in their official capacity. Garcia, 777 F.2d at 1407. The court also stated, "We sympathize with the trial court and the plaintiff when they have been `sand bagged' as they were on this issue. However, the cases dictate this post-trial revision of the issues." Id. at 1406. Without additional analysis, the court of appeals reversed the judgment.
The statement by the court of appeals that the federal district court and plaintiff had been "sand bagged" was an interesting comment since the record indicates that the eleventh amendment immunity defense had been raised in defendants' Answer, First and Second Amended Answer and Pretrial Order. More importantly, as the appellate court itself recognized, this defense can be raised at any time regardless of whether the trial court addressed it.
In the present case, plaintiffs claim that they were deprived of a favorable jury verdict in the federal case because of the defendants' wrongful conduct in the defense of that case. In effect, plaintiffs argue that if they had known that their case against the board in its official capacity was barred by the eleventh amendment, they would not have dropped the claims against the board members in their individual capacities. Defendants moved to dismiss plaintiffs' complaint pursuant to SCRA 1986, 1-012(B)(6) for failure to state a claim upon which relief could be granted. From the granting of defendants' motion, plaintiffs have appealed. We affirm the judgment of the district court.
The issue before us on appeal is whether defendants' conduct in the previous federal lawsuit gives rise to a cause of action by plaintiffs. Specifically, plaintiffs allege that defendants' conduct constituted a duty by opposing counsel to plaintiffs and was not privileged, thereby resulting in an action in negligent misrepresentation; was a violation of the Code of Professional Responsibility and the Attorney's Oath; and gave rise to an action for constructive fraud, promissory estoppel and breach of contract. Whether any of these theories of liability state a cause of action against an attorney by a non-client adversary party is a case of first impression in New Mexico. We note at the outset that plaintiffs' claim of breach of contract between plaintiffs and defendants was not briefed to this Court; hence, we deem it to be abandoned. SCRA 1986, 12-216; State v. Sandoval, 90 N.M. 260, 261, 561 P.2d 1353, 1354 (Ct. App.), cert. denied, 90 N.M. 637, 567 P.2d 486 (1977).
A motion to dismiss tests the legal sufficiency of the complaint. SCRA 1986, 1-012. In considering a motion to dismiss for failure to state a claim for which relief can be granted, the applicable rule to be followed is to accept as true all facts well pleaded and question only whether the plaintiffs might prevail under any state of facts provable under the claim. Groendyke Transp. Inc. v. New Mexico State Corp. Comm'n, 85 N.M. 718, 721, 516 P.2d 689, 692 (1973); Gomez v. Board of Educ., 85 N.M. 708, 710, 516 P.2d 679, 681 (1973).

1. Duty of Care to a Third Party Non-Client.

Plaintiffs allege that defendants' conduct in the prior lawsuit in which certain statements were made and relied on by opposing counsel and the trial court created a duty of professional care even though plaintiff was an adversary of defendants' client. Plaintiffs contend that defendants represented in court that they would not raise the eleventh amendment *122 immunity defense. Plaintiffs further maintain that the parties' agreement to this arrangement, which was approved by the court and thereby given the "effect of law" resulted in a duty of care owed to Garcia.
A majority of jurisdictions do not hold attorneys liable for professional negligence to third party non-clients. Annotation, Attorneys-Liability To Third Parties, 45 A.L.R.3d 1181 (1972 and Supp. 1987). A duty of care toward non-clients has been found to exist only in those situations where the non-client was an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others. Id. The two situations most productive of third party claims have been will drafting and examination of titles, id.; see also Wisdom v. Neal, 568 F. Supp. 4, 8 (D.N.M. 1982); neither of which aid the plaintiffs in their present action.
An attorney has no duty however to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client. See Lewis v. Swenson, 126 Ariz. 561, 564, 617 P.2d 69, 72 (App. 1980); Fox v. Pollack, 181 Cal. App.3d 954, 961, 226 Cal. Rptr. 532, 536 (1986); Nelson v. Miller, 227 Kan. 271, 287, 607 P.2d 438, 450 (1980). Negligence is not a standard on which to base liability of an attorney to an adverse party. Tappen v. Ager, 599 F.2d 376, 379 (10th Cir.1979). An adverse party cannot justifiably rely on the opposing lawyer to protect him from harm; negligence contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it. In the present context, this duty is owed by the lawyer to his client and to the legal system. Negligence does not form a basis for suit by an opposing party.
Historically, our court system has always been adversarial in nature. The role of the attorney therein is to represent and advocate a client's cause of action as vigorously as the rules of law and professional ethics will permit. For that reason an attorney's exclusive and paramount duty must be to the client alone and this duty cannot run to the client's adversary. Not only would the adversary's interests interfere with the client's interests, but the attorney's ongoing and justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship. Friedman v. Dozorc, 412 Mich. 1, 24, 312 N.W.2d 585, 592 (1981); see also Weaver v. Superior Court, County of Orange, 95 Cal. App.3d 166, 156 Cal. Rptr. 745 (1979); Berlin v. Nathan, 64 Ill. App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367 (1978), cert. denied, 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 36 (1979). Thus, an attorney in discharging professional duties on behalf of his client cannot be held liable for negligence toward an adverse party. See Tappen, 599 F.2d at 378; see also Holland v. Lawless, 95 N.M. 490, 623 P.2d 1004 (Ct. App.), cert. denied, 95 N.M. 593, 624 P.2d 535 (1981); SCRA 1986, 16-301 to 309. As a matter of public policy in order to maintain and enforce the fidelity and duty of the attorney toward the client, we cannot jeopardize the integrity of the adversarial system by imposing a professional duty on an attorney toward an adverse party.
We, therefore, hold in accordance with established law that an attorney cannot be held liable on a cause of action in negligence to his client's adversary.

2. Negligent Misrepresentation.

Another of plaintiffs' theories of liability was negligent misrepresentation. New Mexico follows this tort as set forth in Restatement (Second) of Torts Section 552 (1977) which reads:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*123 (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Stotlar v. Hester, 92 N.M. 26, 29, 582 P.2d 403, 406 (Ct.App.), cert. denied, 92 N.M. 180, 585 P.2d 324 (1978); see also Holland, 95 N.M. at 496-97, 623 P.2d at 1010-11. Privity of contract is no longer a prerequisite for this tort. Stotlar, 92 N.M. at 28, 582 P.2d at 405. Absent fraud, however, it does require a duty on the part of the person furnishing the information and the person receiving the information must have a right to rely on it. Id.
As already noted, an attorney owes no legal duty to his client's adversary when acting on behalf of his client. The very nature of the adversary process precludes justifiable reliance by an opposing party. See Bickel v. Mackie, 447 F. Supp. 1376, 1381 (N.D.Iowa), aff'd, 590 F.2d 341 (8th Cir.1978). Thus, as to this count, the court properly dismissed the complaint.

3. Violation of the Code of Professional Conduct and Attorney's Oath.

Plaintiffs argue that New Mexico's former Code of Professional Responsibility (Code) as well as the Attorney's Oath give rise to a private cause of action for damages against attorneys. Other courts which have addressed this question relating to the Code have held that it does not. See Bob Godfrey Pontiac, Inc. v. Roloff, 291 Or. 318, 330-331, 630 P.2d 840, 847 (1981); Noble v. Sears, Roebuck & Co., 33 Cal. App.3d 654, 109 Cal. Rptr. 269 (1973); Brody v. Ruby, 267 N.W.2d 902 (Iowa 1978); Nelson, 227 Kan. at 289, 607 P.2d at 451; Spencer v. Burglass, 337 So.2d 596 (La. App. 1976), cert. denied, 340 So.2d 990 (La. 1977); Drago v. Buonagurio, 46 N.Y. 2d 778, 413 N.Y.S.2d 910, 386 N.E.2d 821 (1978). Several reasons for this rule have been enunciated. The Code was not intended to create a private cause of action since its intended remedy is the imposition of disbarment, suspension or reprimand of the offending attorneys. The public can avail itself of other remedies against unprofessional lawyers. And, finally, to expose attorneys to actions for breach of ethical duties imposed by the codes would be contrary to the public interest in affording every citizen the utmost freedom of access to the courts. Bob Godfrey Pontiac, Inc., 291 Or. at 331-32, 630 P.2d at 848.
Plaintiffs contend that the former Code's omission of a preamble and ethical considerations, which are now included in the Code, did not bar the right to bring a separate cause of action. It is only the new Code (Rules of Professional Conduct), plaintiffs maintain, that precludes civil liability. Plaintiffs' analysis of that earlier omission, however, totally misinterprets the essence of our Code.
Historically, the Code was established to discipline attorneys. It was not intended to provide a foundation for civil liability. This disciplinary purpose has always been the cornerstone of the Code and our recent adoption of the preamble recognizes this same purpose by stating it within the Code.
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.
SCRA 1986, 16-101 (Scope); accord Speer v. Cimosz, 97 N.M. 602, 605, 642 P.2d 205, 208, (Ct.App.), cert. denied, 98 N.M. 50, 644 P.2d 1039 (1982).
A private action for the breach of an oath taken by an attorney will also not lie. See Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc., 358 F. Supp. 17, 22 *124 (E.D.Tenn. 1972), aff'd, 477 F.2d 598 (6th Cir.1973). The remedy for such a breach is not the private remedy of damages. Id. No authority has been cited by plaintiffs in support of their claim except for their analogy that a civil action will lie for the breach of a statutory duty as negligence per se. Negligence per se, however, is a method of proving negligence where a cause of action already exists. We have already noted that no action in negligence exists in this case. Plaintiffs' attempt to state a cause of action grounded in the Code and Attorney's Oath fails as the trial court concluded.

4. Constructive Fraud and Promissory Estoppel.

Likewise plaintiffs have failed to allege any facts to constitute an action for either constructive fraud or promissory estoppel. The law in New Mexico has defined constructive fraud to be "acts contrary to public policy, to sound morals, to the provisions of a statute, etc., however honest the intention with which they may have been performed." Wolf & Klar Cos. v. Garner, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984) (quoting Leitensdorfer v. Webb, 1 N.M. 34, 53-54 (1853), aff'd, 61 U.S. (20 How.) 176, 15 L.Ed. 891 (1858)). In other words, constructive fraud is "a breach of a legal or equitable duty, irrespective of the moral guilt of the fault-feasor." Archuleta v. Kopp, 90 N.M. 273, 276, 562 P.2d 834, 837 (Ct.App.), cert. quashed, 90 N.M. 636, 567 P.2d 485 (1977). To find such a legal or equitable duty in the context of this case would be contrary to an attorney's duty to represent his client and pursue his client's interests with undivided loyalty. And, as we have already noted, defense counsel owes no duty to his client's adversary.
Promissory estoppel has been defined as:
a promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of a promisee and which does not induce such action or the forebearance is binding if injustice can be avoided only by enforcement of the promise. Restatement (Second) of Contracts § 90 (1981). The limits of promissory estoppel are (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonably in justifiable reliance on the promise as made.
Eavenson v. Lewis Means, Inc., 105 N.M. 161, 162, 730 P.2d 464, 465 (1986). In other words, the doctrine requires reliance on a promise. Id.
Any reliance alleged by plaintiffs is not justifiable as there is no duty running from trial counsel to his adversary. See Tappen, 599 F.2d at 378. Nor could any claimed reliance be legally foreseeable in this case. See Bickel, 447 F. Supp. at 1381.
Even though we have found no legal duty that would give rise to an independent cause of action, we recognize that, in general, appropriate means do exist to redress a grievance concerning an attorney's alleged misconduct. Within the action out of which a grievance arises, remedies are provided for the benefit and relief of parties wronged through reasonable reliance upon misrepresentations of an adversary's attorney. Further, the Rules of Professional Conduct provide the framework for the ethical practice of law. Failure to abide by the rules is the basis for invoking disciplinary proceedings.
We hold that the trial court properly dismissed plaintiffs' complaint for failure to state a cause of action upon which relief can be granted. In view of our disposition of this case, we need not reach the issue of absolute privilege raised by the defendants.
IT IS SO ORDERED.
SCARBOROUGH, C.J., and RANSOM, J., concur.
WALTERS, J., concurs in result only.
SOSA, Senior Justice, not participating.